THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>JAMES BURKS, individually and d/b/a BURKS HARDWOOD LUMBER, and ROBERT WHITE,<br><br>Defendants. | Case No. |

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, SCOTTSDALE INSURANCE COMPANY, by and through its attorney, Jonathan L. Schwartz of Goldberg Segalla LLP, brings this Complaint for Declaratory Judgment against Defendants, JAMES BURKS, individually and d/b/a BURKS HARDWOOD LUMBER, and ROBERT WHITE, and alleges and states as follows:

### JURISDICTION AND VENUE

1. Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).

2. Plaintiff, SCOTTSDALE INSURANCE COMPANY ("Scottsdale") is a corporation organized under the laws of Ohio, with its principal place of business in Scottsdale, Arizona.

3. Defendant, JAMES BURKS is a resident of Vernon, Illinois and a citizen of the State of Illinois. Mr. Burks operates BURKS HARDWOOD LUMBER as a sole proprietorship in Vernon, Illinois, which necessarily makes Burks Hardwood Lumber a citizen of the State of Illinois, as well.

4. Defendant, ROBERT WHITE is a resident of Brownstown, Illinois and a citizen of the State of Illinois.

5. Scottsdale brings this action to obtain a declaratory judgment finding that it has no duty to defend or indemnify James Burks, individually, and d/b/a Burks Hardwood Lumber ("Burks") in connection with a personal injury lawsuit brought by White in the Circuit Court of Marion County, Illinois, encaptioned *Robert White v. James Burks, individually, and d/b/a Burks Hardwood Lumber*, No. 2017 L 11 ("Underlying Lawsuit").

6. Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between Plaintiff on the one hand, and Defendants on the other hand; and (b) the amount in controversy, including the potential costs of defending and indemnifying Burks with regard to the Underlying Lawsuit exceeds $75,000.

7. Venue is appropriate under 28 U.S.C. § 1391(b)(2), as the events or omissions giving rise to the Underlying Lawsuit occurred in this District, the Defendants reside in this District, and the subject insurance policy was issued to Burks in this District.

8. An actual justiciable controversy exists between Scottsdale, on the one hand, and the Defendants, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liability of the parties hereto and to grant such relief as it deems necessary and proper.

## SCOTTSDALE POLICY

9. Scottsdale issued to Jim Burks d/b/a Burks Hardwood Lumber commercial general liability insurance policy, No. CPS2152497, for the February 8, 2015 to February 8, 2016 policy period ("Policy"). A true and correct copy of the Policy is attached hereto as **Exhibit A**.

10. The Policy contains the following Insuring Agreement under Coverage A:

**1. Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to

>
> defend the insured against any "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply. ...
>
> \* \* \*
>
> **b.** This insurance applies to "bodily injury" ... only if:
>
> > **(1)** The "bodily injury" ... is caused by an "occurrence" that takes place in the "coverage territory";
>
> \* \* \*

11. The Policy also contains the following relevant exclusions:

> **2.** **Exclusions**
>
> This insurance does not apply to:
>
> **a.** **Expected Or Intended Injury**
>
> > "Bodily injury" ... expected or intended from the standpoint of the insured. ...
>
> \* \* \*
>
> **d.** **Workers' Compensation And Similar Laws**
>
> > Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.
>
> **e.** **Employer's Liability**
>
> > "Bodily injury" to:
> >
> > **(1)** An "employee" of the insured arising out of and in the course of:
> >
> > > **(a)** Employment by the insured; or
> > >
> > > **(b)** Performing duties related to the conduct of the insured's business; . . .
> >
> > \* \* \*
> >
> > This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to

share damages with or repay someone else who must pay damages because of the injury.

12. The Policy also contains an Employment-Related Practices Exclusion Endorsement (CG 21 47 12-07) ("Endorsement"), which states, in pertinent part, there is no coverage for "bodily injury" to "[a] person arising out of any … [t]ermination of that person's employment …."

13. The Policy defines "employee" as including a "leased worker," but not a "temporary worker." The Policy then defines "leased worker" as "a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business." The Policy also defines "temporary worker" as "a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions."

14. The Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

15. The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

## UNDERLYING COMPLAINT

16. The Complaint at Law in the Underlying Lawsuit ("Underlying Complaint") alleges that White was an employee of Burks on August 6, 2015 when he was injured. A true and correct copy of the Underlying Complaint is attached hereto and incorporated herein as **Exhibit B**.

17. The Underlying Complaint alleges that while White was working for Burks by cleaning the exhaust pipes of an industrial lumber edging machine owned by Burks, another of Burks' employees, Shawn Norris, approached the machine and engaged the power switch, causing the sharp blades to injure White's hand.

18. The Underlying Complaint alleges that Burks failed to maintain worker's compensation insurance as required by Illinois law.

19. The Underlying Complaint asserts three causes of action against Burks for Premises Liability (Count I); Negligent Hiring, Retention, and Supervision (Count II); and Retaliatory Discharge/Unlawful Termination (Count III).

20. Count I specifically alleges that White was injured while he was lawfully on the Premises and that his injuries were caused by Burks' negligent failure to maintain the premises in a safe condition, to repair and maintain the machinery and equipment, to provide adequate safety measures, and to maintain procedures for protecting the safety of those on the premises.

21. It is also alleged in Count I that Burks "[w]illfully attempted to conceal and/or hide the existence of Plaintiff's injuries."

22. Count II alleges that Burks knew or should have known Norris was unfit for his job and that he created a danger of harm to persons, including White. It further alleges Burks carelessly or negligently failed to properly screen potential employees, to provide adequate safety equipment and mechanisms, to generally supervise and/or train, and to terminate those unfit for employment.

23. Count II also alleges that Burks "[w]illfully engaged in a systematic course of fraudulently concealing and/or hiding workplace injuries" and "[w]illfully employed individual(s) who [Burks] knew or should have known to be unfit to supervise the tasks and assigned duties of those individuals under [Burks'] control and/or authority." These acts or omissions are alleged to have caused White's injuries.

24. Count III alleges on or about March 23, 2016, White retained legal representation to pursue a worker's compensation claim with respect to the injuries he sustained on August 6, 2015 while employed by Burks.

25. Count III further alleges that Burks subsequently terminated White's employment as a result, *i.e.*, White's pursuit of a worker's compensation claim was the sole reason for Burks' decision to terminate White's employment.

26. Count III alleges White sustained economic damage as a result of Burks' conduct.

## SCOTTSDALE DISCLAIMED COVERAGE

27. Burks has sought coverage for the Underlying Lawsuit under the Policy.

28. Scottsdale rejected Burks' tender of coverage on or about May 31, 2017.

## COUNT I – DECLARATORY JUDGMENT – NO DUTY TO DEFEND
## (EXCLUSIONS d. and e.)

29. Scottsdale incorporates by reference paragraphs 1-28 above as if fully stated herein.

30. There is no coverage under the Policy because Exclusion **d.** precludes coverage entirely. In particular, White is seeking damages representing the workers' compensation benefits he would have been entitled to had Burks purchased a workers' compensation policy.

31. There is no coverage under the Policy because Exclusion **e.** precludes coverage entirely. In particular, the Policy does not cover suits seeking damages for injuries to an employee of Burks, such as White, who was injured during the course of his employment. In particular, the Underlying Complaint alleges that White was Burks' employee while he was at the subject premises and that White was injured while working for Burks and cleaning Burks' edger machine. Moreover, Burks has admitted to Scottsdale that White was employed by Burks as an "edgerman" at the time of the incident and was paid on the weekly payroll. Accordingly, the Underlying Complaint seeks damages for injuries to Burks' employee who was injured during the course of his employment by Burks or while performing duties related to the conduct of Burks' business.

32. Given the application of Exclusions **d.** and **e.**, Scottsdale has no duty to defend Burks in connection with the Underlying Lawsuit.

## COUNT II – DECLARATORY JUDGMENT – NO DUTY TO INDEMNIFY
## (EXCLUSIONS d. and e.)

33. Scottsdale incorporates by reference paragraphs 1-32 above as if fully stated herein.

34. Given the application of Exclusions **d.** and **e.**, Scottsdale has no duty to indemnify Burks in connection with the Underlying Lawsuit.

## COUNT III – DECLARATORY JUDGMENT – NO DUTY TO INDEMNIFY (OTHER COVERAGE DEFENSES)

35. Scottsdale incorporates by reference paragraphs 1-28 above as if fully stated herein.

36. Any indemnity obligation Scottsdale may arguably have under the Policy is limited to claims for "bodily injury", *i.e.* physical injuries, suffered by White.

37. Count III is based solely on economic loss and does not allege "bodily injury."

38. Scottsdale has no duty to indemnify Burks for an award based on retaliatory discharge or unlawful termination, as alleged in Count III.

39. Additionally, the Policy's Employment Related Practices Exclusion Endorsement precludes any coverage for "bodily injury" to a person arising out of the termination of that person's employment.

40. To the extent Count III implicates the Policy's "bodily injury" coverage, the Employment Related Practices Exclusion Endorsement would still preclude any duty to indemnify Burks for an award based on Burks' wrongful termination of White's employment.

41. Any indemnity obligation Scottsdale may arguably have under the Policy is limited to coverage for "bodily injury" caused by an "occurrence."

42. Counts I and II in the Underlying Complaint specifically allege that Burks willfully and fraudulently concealed workplace injuries on the subject premises and willfully employed individuals Burks knew to be unfit for supervising others at the Premises.

43. Since White's injuries, as alleged in Count II in the Underlying Complaint, were not caused by an "occurrence," *i.e.*, "an accident", Scottsdale has no duty to indemnify Burks for an award based on a theory of negligent hiring, retention, and supervision.

44. Likewise, since White's injuries, as alleged in Count II in the Underlying Complaint, were expected or intended by Burks, Exclusion **a.** would preclude any duty Scottsdale might arguably have to indemnify Burks for an award based on a theory of negligent hiring, retention, and supervision.

WHEREFORE, Plaintiff, SCOTTSDALE INSURANCE COMPANY, respectfully requests this Court declare and adjudge the controversy as follows:

A. Declare that Scottsdale has no duty to defend Burks in connection with the Underlying Lawsuit; and

B. Declare that Scottsdale has no duty to indemnify Burks in connection with the Underlying Lawsuit; and

C. Grant any other relief this Court deems just and equitable under the circumstances, including the award of costs.

DATE: June 27, 2017

Respectfully submitted,

**GOLDBERG SEGALLA, LLP**

By: /s/Jonathan L. Schwartz
Attorney for Scottsdale Insurance Company

Jonathan L. Schwartz (ARDC #6287338)
311 S. Wacker Dr., Ste. 2450
Chicago, IL 60606
Tel: (312) 572-8411
Fax: (312) 572-8401
jschwartz@goldbergsegalla.com